IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL WILLIAM BEARD,

Petitioner,

vs.

M. MARTEL, Warden, Mule Creek State Prison,

Respondent.

No. 2:09-cv-03508-JKS

MEMORANDUM DECISION

Michael William Beard, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under 28 U.S. C. § 2254.  Beard is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Mule Creek State Prison.  Respondent has answered, and Beard has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

In October 2005 Beard was convicted by a jury in the Alameda County Superior Court of one count each of Kidnapping with the Intent to Commit Rape or Sexual Penetration (Cal. Penal Code § 209(b)(1)), Rape of an Unconscious Person (Cal. Penal Code § 261(a)(4)), and Digital Penetration of an Unconscious Person (Cal. Penal Code § 289(d)).  The trial court sentenced Beard to life in prison with the possibility of parole on the kidnapping conviction, plus a combined consecutive, determinate prison term of 20 years on the other two counts.  Beard timely appealed his conviction and sentence to the California Court of Appeal, which affirmed

his conviction and the sentence in an unpublished decision.[1]   The California Supreme Court

denied review on July 16, 2008.  Beard filed a petition for habeas relief in the El Dorado County

Court on July 28, 2008.  The El Dorado County Court denied his petition in an unreported,

reasoned decision.  Beard's petition for habeas relief to the California Court of Appeal was

summarily denied without opinion or citation to authority.  Beard then petitioned the California

Supreme Court for habeas relief, which was summarily denied without opinion or citation to

authority on September 9, 2009.  Beard timely filed his Petition for relief in this Court on

December 9, 2009.

     The factual basis underlying Beard's conviction, as recited by the California Court of

Appeal, was:

> The 15-year-old victim went with some friends to a wooded area behind
> their apartment complex to drink.  Teenagers often congregated in this area, where
> there were a number of logs in a pile.  We will refer to this area as "the log pile"
> to distinguish it from the different location where the sexual assault took place.
>     [Beard], the 20-year-old brother of one of the victim's friends, was already
> at the log pile when the group arrived.  They were joined by one of [Beard's]
> friends, Luke Branson.
>     The victim and the others drank a lot of vodka.  The victim became drunk,
> kissed Branson, and told him that she wanted to have sex with him.  She sat on
> the ground, leaning against the log, and spoke incoherently.  When she tried to
> stand up, she passed out.  She did not remember anything that occurred after this
> point.
>     Branson was the main prosecution witness and described what transpired.
> According to his testimony, [Beard] said, "Come on, let's go fuck her."  Branson
> accompanied [Beard], who picked the victim up and carried her approximately 50
> to 85 feet to a more secluded area, across a road and down into a gully where there
> were trees and bushes.  The area was not visible from the road but was another
> place where teens often gathered to smoke and drink.  We refer to this site as "the
> wooded area."

---

[1] *People v. Beard*, 2008 WL 889433 (Cal. App. Apr. 3, 2008).  The appellate court did,
however, modify the judgment to reflect a restitution fine of $10,000 and a probation revocation
fine of a like amount.

2

[Beard] put the victim on the ground, said he was going to get some condoms, and started to walk back to his apartment.

As [Beard] neared the apartment complex, he ran into another teen, Daniel R., who was headed to the log pile to join everyone else. [Beard] said, "We're getting ready to fuck some bitch, do you want a condom?" Daniel said he was "not cool with that," and continued to the log pile. En route, Daniel met [Beard's] brother, Matt, who told him that no one was at the log pile. Matt and Daniel instead went to the wooded area, where the victim was lying unconscious, with her head in Branson's lap. She was fully clothed.

Daniel tried to wake the victim, but was unsuccessful. Branson told him that he would take care of her, and Daniel returned to the apartment complex.

[Beard] came back to the wooded area and gave Branson a condom. Branson and [Beard] undressed the victim, leaving only her swimsuit top around her neck. According to Branson, [Beard] put his fingers into the victim's vagina. Branson put his mouth on the victim's breast. Branson then put on a condom and tried to penetrate the victim; as described later in this opinion, his testimony was equivocal as to whether he actually did so. He said that Matt covered the victim's eyes and, at one point, [Beard] held her legs as Branson tried to penetrate her. The victim did not regain consciousness at any time. Branson did not ejaculate, and he threw the condom and its wrapper on the ground.

Branson heard people calling the victim's name and saw flashlights. [Beard] and Branson left the victim, ran up the embankment, across the road, and back to [Beard's] apartment, where they sat on the patio and smoked cigarettes. When a police officer asked if they had seen the victim, they replied they had not.

At some point, another neighbor noticed the police action, and asked Daniel if he knew what had happened. While they were talking, [Beard] came up to them and said there was a girl who was naked, drunk, and passed out in the woods. Daniel led the neighbor to the wooded area, where they found the victim.

Emergency personnel took her to the hospital. The victim was still unconscious and had a blood alcohol level of 0.30. A nurse performing an external pelvic examination of the victim noticed plant matter and dirt in and around the victim's genitals. She also noticed redness and a small tear, injuries consistent with penile and digital penetration. Because the victim began to struggle, the nurse was unable to perform an internal examination. The victim eventually regained consciousness, but did not remember anything that had happened.

Officers investigating the assault took [Beard] and his brother, Matt, to the police station for questioning. When the brothers were left alone in the police car, a recording device picked up their conversation. [Beard] said to Matt: "Me and [Branson] were together, you don't know [Branson's] name . . . ." "I'm just making sure you don't (inaudible) all you know is that [the victim] (inaudible) was with Melissa [Beard's sister]." "Just say, just say, just say that's all you know." [Beard] continued, "All they're going to do is ask us questions. Do not break down Matt, Matthew, do not break down. They're gonna ask you some

questions.  [¶] . . . [¶]  You don't know nothing.  Don't let em fucking—just tell
them I wasn't involved, you weren't involved.  You weren't even near the girl."
He added, "[J]ust say you didn't see her.  Say you might have seen her earlier at
the pool today.  That's the only time you see her.  Or you—or you heard that
Melissa was kicking it with her earlier just a little while ago.  That's all you, that's
all you, that's all you know.  But if they are trying to say was I with her?  No.
Were you with her?  No.  Was [Branson] with her?  No.  Me and [Branson] were
together."  He added, "[W]e didn't do anything any ways.  We just don't want to
mix up our stories.  We didn't do anything.  We weren't even—we weren't even
with her anyways."

     The next night, officers conducted a probation search of the apartment
where [Beard] lived with his family.  They found an empty vodka bottle, similar
to the one found at the log pile.  They also found a package of condoms that
matched the one found in the wooded area.

     DNA on the condom found in the wooded area matched that of Branson
and the victim.

     Branson entered a plea agreement with the prosecution and testified at trial
against defendant.  The jury was instructed that Branson was an accomplice as a
matter of law.[2]

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Beard raises 15 grounds:  (1) insufficient evidence corroborating the

testimony of the accomplice; (2) the asportation of the victim was insufficient to support a

conviction for aggravated kidnapping; (3) insufficient evidence of penetration to support a

conviction of rape; (4) exclusion of the details of his accomplice's plea agreement violated his

Sixth Amendment right to confrontation; (5) the prosecution's comment on Beard's silence

violated his Fifth Amendment right against self-incrimination; (6) the trial court erred by giving a

"natural and probable consequences" instruction to the jury; (7) failure to include a lesser-

included offense instruction to the jury; (8) a failure to *sua sponte* instruct the jury on a *Mayberry*

---

     [2] *Beard*, 2008 WL 889433 at *1-*3.  In this decision, except for the substitution of
"Beard" for "defendant" where appropriate, alterations in the opinion of the California Court of
Appeal are in the original.

defense;[3] (9) the trial court improperly imposed sentences on all three counts of the conviction in violation of California Penal Code § 654; (10) the selection of the upper term violated the principles of *Apprendi-Blakely-Cunningham*; (11) the State reneged on a prior "Global Settlement" plea agreement, which violated his rights under the Due Process Clause of the Fourteenth Amendment; (12) the trial court improperly permitted a potential key defense witness to assert a blanket Fifth Amendment privilege against testifying; (13) his right to the assistance of counsel was infringed when a counsel, who subsequently represented Beard's co-defendant/accomplice, Branson, was permitted to appear on behalf of Beard at a preliminary hearing; (14) a denial of his fundamental rights to a fair trial under the Sixth Amendment; and (15) ineffective assistance of trial counsel.

Respondent contends that Beard's fourth ground is procedurally barred, and that Beard's sixth, seventh, eighth, and twelfth grounds are barred by *Teague v. Lane*.[4]  Respondent raises no other affirmative defense.[5]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

---

[3] *People v. Mayberry*, 542 P.2d 1337 (Cal. 1975) (a short-hand reference to an instruction that a reasonable and good faith belief that a victim consented to sexual intercourse is a defense to rape); *see* CALCRIM 1000; 1045 (former CALJIC 10.65).

[4] 489 U.S. 288 (1989) (a short-hand reference to the doctrine that a new rule will not be applied in a federal habeas proceeding unless it is a "watershed" rule).  This Court is perplexed by Respondent's *Teague* argument.  This Court does not "announce new rules" in a federal habeas proceeding, it applies the law "as determined by the Supreme Court of the United States" at the time of the state court decision.  28 U.S.C. § 2254(d)(1); *Cullen v. Pinholster*, 562 U.S. ___, ___, 131 S. Ct. 1388, 1399 (2011).  Thus, *Teague* is inapplicable.

[5] *See* Rules—Section 2254 Cases, Rule 5(b).

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be objectively unreasonable, not just incorrect or erroneous.[10]  The Supreme Court has made

clear that the objectively unreasonable standard is a substantially higher threshold than simply

-------

[6] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412.

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

believing that the state court determination was incorrect.[11]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[12]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[13]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

In applying this standard, this Court reviews the last reasoned decision by the state court.[15]  State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[16]  Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for

---

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[15] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[16] *Ylst*, 501 U.S. at 802-03.

review of the court of appeal's denial in the California Supreme Court.[17]  This is considered as

the functional equivalent of the appeal process.[18]  Under AEDPA, the state court's findings of

fact are presumed to be correct unless the petitioner rebuts this presumption by clear and

convincing evidence.[19]  This presumption applies to state trial and appellate courts alike.[20]

     To the extent that Beard raises issues of the proper application of state law, they are

beyond the purview of this Court in a federal habeas proceeding.[21]  It is a fundamental precept of

dual federalism that the states possess primary authority for defining and enforcing the criminal

law.[22]  "[A] state court's interpretation of state law, including one announced on direct appeal of

the challenged conviction, binds a federal court sitting in habeas corpus."[23]  A federal court errs if

it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's

---

    [17] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

    [18] *Id.* at 222.

    [19] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

    [20] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

    [21] *Swarthout v. Cooke*, 562 U.S. ___, ___, 131 S. Ct. 859, 863 (2011) (per curiam)
(holding that it is of no federal concern whether state law was correctly applied).

    [22] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot
reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S.
639, 653 (1990) (it is presumed that the state court knew and correctly applied state law),
*overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*,
456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not
allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455
(2005) (a federal court may not lightly presume that a state court failed to apply its own law).

    [23] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see Mullaney v. Wilbur,* 421 U.S. 684,
691 (1975) ("state courts are the ultimate expositors of state law") *West v. AT&T,* 311 U.S. 223,
236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has
spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

interpretation of the law.[24]  It does not matter that the state supreme court's statement of the law

was dictum if it is perfectly clear and unambiguous.[25]  A determination of state law by a state

intermediate appellate court is also binding in a federal habeas action.[26]  This is especially true

where the highest court in the state has denied review of the lower court's decision.[27]

A petitioner may not transform a state-law issue into a federal one by simply asserting a

violation of due process.[28]  "[The Supreme Court has] long recognized that a mere error of state

law is not a denial of due process."[29]  "[A]bsent a specific constitutional violation, federal habeas

corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as

to make the resulting conviction a denial of due process.'"[30]  "'Federal courts hold no supervisory

authority over state judicial proceedings and may intervene only to correct wrongs of

constitutional dimension.'"[31]

---

[24] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[25] *Id.* at 76.

[26] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[27] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[28] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[29] *Cooke*, 562 U.S. at ___, 131 S. Ct. at 863 (internal quotation marks and citations omitted).

[30] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[31] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

9

### IV.  DISCUSSION

Beard's 15 claims fall within seven categories:  insufficiency of the evidence (first, second, and third); evidentiary rulings (fourth and twelfth); jury instructions (sixth, seventh, and eighth); improper sentencing (ninth and tenth); prosecutorial error (fifth and eleventh); ineffective assistance of counsel (thirteenth and fifteenth); and judicial bias (fourteenth).  To avoid unnecessary duplication and promote clarity, this Court will address Beard's claims in a group by category.

Initially, this Court notes that the Petition filed in this case is terse, and the factual basis for each claim is inadequately developed.  The petition must specify all the grounds for relief available to the petitioner *and the facts supporting each ground.*[32]  As the Supreme Court has stated:

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  See also Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts.  [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)).  Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:
>
> > "**<u>CAUTION</u>:  You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge.  And you must state the facts that support each ground.  If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**"
> > Petition for Relief From a Conviction or Sentence By a Person in

---

[32] Rules—Section 2254 Cases, Rule 2(c).

State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P.
685 (2000 ed., Supp. V) (emphasis in original).

A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with
particularity is to assist the district court in determining whether the State should
be ordered to "show cause why the writ should not be granted." § 2243. Under
Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the
petitioner is not entitled to relief in the district court," the court must summarily
dismiss the petition without ordering a responsive pleading. If the court orders the
State to file an answer, that pleading must "address the allegations in the petition."
Rule 5(b).[33]

Beard bears the burden of proving a constitutional violation by a preponderance of the

evidence.[34]  Although the Petition in this case is not necessarily so deficient as to require

summary dismissal, the paucity of a factual basis to support Beard's claims imposes an increased

burden on this Court to search the record for the facts.

## A.    Insufficiency of the Evidence

As articulated by the Supreme Court in *Jackson*, the constitutional standard for

sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to

the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."[35]  This Court must, therefore, determine whether the California

court unreasonably applied *Jackson*.  In making this determination, this court may not usurp the

role of the finder of fact by considering how it would have resolved any conflicts in the evidence,

made the inferences, or considered the evidence at trial.[36]  Rather, when "faced with a record of

---

[33] *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).

[34] *Silva*, 279 F.3d at 835; *see Bartholomew*, 516 U.S. at 8 (stating that a federal court
cannot grant "habeas relief on the basis of little more than speculation with slight support").

[35] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel
v. Brown*, 558 U.S. ___, ___, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[36] *Jackson*, 443 U.S. at 318-19.

historical facts that supports conflicting inferences," this court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[37]

Ground 1: Lack of Corroborating Evidence

Beard contends that he was convicted of aggravated kidnapping and digital penetration based solely on the uncorroborated testimony of an accomplice. In rejecting Beard's argument, the California Court of Appeal held on direct appeal that there was sufficient corroborating evidence to support both aggravated kidnapping and digital penetration.[38]

There is no federal constitutional rule requiring corroboration of accomplice testimony.[39] Rather, Beard "would have [this Court] abandon [the] time honored rule that the uncorroborated testimony of an accomplice is sufficient to convict."[40] In this case, Beard's claim is based solely upon California state law concerning accomplice status and the requirement of corroboration. The California Court of Appeal held that there was sufficient corroborating evidence to support the accomplice's testimony under California law. That determination is beyond the purview of this Court in a federal habeas proceeding.[41] Having failed to present a question of constitutional dimension, Beard is not entitled to relief under his first ground.

---

[37] *Id.* at 326; *see McDaniel*, 558 U.S. at ___, 130 S. Ct. at 673-74.

[38] *Beard*, 2008 WL 889433 at *3-*5.

[39] *See Caminetti v. United States*, 242 U.S. 470, 495 (1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them.").

[40] *United States v. Galardi*, 476 F.2d 1072, 1075 (9th Cir. 1973).

[41] *See Cooke*, 562 U.S. at ___, 131 S. Ct at 863; *Estelle*, 502 U.S. at 67-68; *Walton*, 497 U.S. at 653; *Engle*, 456 U.S. at 119.

Ground 2: – Aggravated Kidnapping; Ground 3: – Rape

In his second ground, Beard contends that, because the victim was only moved about 20 yards, the asportation was insufficient to support a conviction for aggravated kidnapping. Beard was convicted of aiding and abetting his accomplice in committing the rape. In his third ground, Beard argues that, because the testimony of the accomplice was equivocal as to whether the accomplice had penetrated the victim, the evidence was insufficient to establish rape. On direct appeal, the California Court of Appeal rejected Beard's arguments on both issues, holding:

### Sufficiency of the Evidence

[Beard] challenges the sufficiency of the evidence to support his convictions for aggravated kidnapping and rape. His claims are unpersuasive.

#### A. Kidnapping

[Beard] asserts that there was insufficient evidence of asportation to establish that a kidnapping occurred. To the contrary. The victim was unconscious at the log pile and somehow ended up at the wooded area. She did not get there under her own power. Someone moved her to this area, a spot 50 to 85 feet from the original site, down a gully, and into a secluded area away from public view. The asportation element of aggravated kidnapping is met if the victim is moved a distance more than incidental to the commission of the sexual offense, and the movement substantially increased the risk of harm to the victim. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1151-1152, 1155.)

That is precisely what happened here. The victim was moved a distance away, to a place that significantly decreased the possibility that she might be seen or rescued. This movement was not merely incidental to the rape. (See *People v. Dominguez, supra,* 39 Cal.4th at pp. 1153-1154.) More than sufficient evidence established the asportation element of aggravated kidnapping.[42]

#### B. Rape

[Beard] was convicted of rape of an unconscious person based on the theory that he aided and abetted Branson, the person who actually had sexual intercourse with the victim. [Beard] contends that his conviction must be reduced to attempted rape because there is insufficient evidence of penetration to sustain a conviction on the greater offense. We disagree.

"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find [Beard] guilty beyond a reasonable doubt. [Citations.] On appeal, we must view

---

[42] *Beard*, 2008 WL 889433 at *5-*6.

the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."  (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

A reasonable inference "'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.' [Citation.]"  (*People v. Raley* (1992) 2 Cal.4th 870, 891.)

"Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.  [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]"  (*People v. Jones, supra,* 51 Cal.3d at p. 314.)

At trial, Branson testified that he put on a condom and "began to try to have sex with [the victim].  After a minute, I stopped, partly because I couldn't, and partly because I felt it was wrong, so I stopped."  He explained that he "[t]ried to insert [his] penis in her vagina," but was not able to do so.  When asked whether he knew if the tip of his penis entered the victim's vagina, Branson responded, "Not that I know. It might have.  I don't recall it doing that, I mean." Later Branson was asked, "And when you say you tried to have sex with her, did the tip of your penis go [past] the outer lips of her vagina?"  Branson replied, "As far as I can remember, no."  Counsel asked, "Did the tip of the condom?"  Branson answered, "I believe so, yes."

During cross-examination, [Beard's] attorney asked Branson whether he had sex with the victim.  Branson responded, "If you call it sex, yes."  He later stated that he knew the condom "had been inside her or touched her," and on several occasions admitted having lied when he told officers that he did not have sex with the victim.

A nurse testified that the redness and swelling on portions of the victim's genitalia were consistent with penile penetration.  In response to questions from defense counsel, the nurse acknowledged that redness can be caused by infection, but added that infection usually involves more discharge, swelling and redness to a different part of the genital area than seen on the victim.

The victim testified that in the 60 days preceding the assault, she had not had any injury to, or medical treatment of, her genitals and had not had intercourse with anyone.

[Beard] contends that the evidence presented at trial is insufficient to establish that penetration occurred.  We disagree.

Rape involves "[a]ny sexual penetration, however slight[.]"  (§ 263.)  "The penetration which is required is sexual penetration and not vaginal penetration. Penetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter

> succeed in penetrating into the vagina." (*People v. Karsai* (1982) 131 Cal.App.3d 224, 232, disapproved on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.)
>
> [Beard] focuses his attention on the lack of evidence of vaginal penetration. But, as *People v. Karsai* makes clear, vaginal penetration is not required for rape; penetration of the external genital organs is sufficient. Here, Branson acknowledged that the tip of his condom penetrated the victim, and the physical examination of the victim disclosed results consistent with penile penetration. A medical witness explained why an infection was unlikely as the source of these symptoms.
>
> More than sufficient evidence supports the jury's conclusion that sexual penetration occurred. (See *People v. Holt* (1997) 15 Cal.4th 619, 669.)[43]

Beard misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. This Court, as was the California Court of Appeal, is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Where, as in this case, the question is one of credibility, the finding of the jury carries the day.[44] Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[45] In this case, the California Court of Appeal, applying the California counterpart to *Jackson*, determined that there was sufficient evidence to support the conviction under California law. That such evidence exists is clearly established by the record in this case. Beard bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous.[46] Beard has failed to shoulder this burden. That the

---

[43] *Beard*, 2008 WL 889433 at *5-*7.

[44] *See Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

[45] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[46] 28 U.S.C. § 2254(e)(1).

evidence was sufficient to establish the elements of the crime as defined by California law is

beyond the purview of this Court in a federal habeas proceeding.[47]

Based upon the record, this Court cannot say that the decision of the California Court of

Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" at the time the state court renders

its decision or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."[48]  Beard is not entitled to relief under his second and

third grounds.

**B.      Evidentiary Rulings**

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional

restraints on ordinary evidentiary rulings by state trial courts."[49]  "[T]he Due Process Clause does

not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary

rules."[50]  In criminal actions, "[t]he States are free to provide such procedures as they choose,

including rules of evidence, provided that none of them infringes a guarantee in Federal

Constitution."[51]  The Supreme Court has made clear that federal habeas power does not allow

---

[47] *See Cooke*, 562 U.S. at ___, 131 S. Ct at 863; *Estelle*, 502 U.S. at 67-68; *Walton*, 497 U.S. at 653; *Engle*, 456 U.S. at 119.

[48] 28 U.S.C. § 2254(d).

[49] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[50] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).

[51] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.[52]

Ground 4:  Exclusion of Details of Accomplice's Plea Agreement

Beard's accomplice and a witness against him at trial, Luke Branson, entered into a plea agreement.  The trial court excluded from evidence certain details of Branson's plea agreement, including Branson's maximum exposure as originally charged, the sentencing range negotiated as part of the plea agreement, and the specific offenses to which Branson admitted in his plea. Beard contends that this violated his right to confrontation under the Sixth Amendment.[53]  On direct appeal, the California Court of Appeal rejected Beard's arguments holding:

> *Right to Confrontation*
> [Beard] contends that actions by the trial court and the prosecutor violated his constitutional right to confront an essential witness, Luke Branson. Specifically, [Beard] asserts that the trial court erroneously precluded evidence detailing Branson's plea agreement, such as the maximum exposure Branson originally faced, the negotiated sentencing range he received, and the offenses Branson admitted by pleading no contest. [. . . .]
> "[T]he existence of a plea agreement is relevant impeachment evidence that must be disclosed to the defense because it bears on the witness's credibility. [Citation.]  Indeed, . . . 'when an accomplice testifies for the prosecution, full disclosure of any agreement affecting the witness is required to ensure that the jury has a complete picture of the factors affecting the witness's credibility.' [Citation.]"  (*People v. Fauber, supra,*  2 Cal.4th at p. 821; see also *People v. Phillips* (1985) 41 Cal.3d 29, 46.)
> "Full disclosure is not necessarily synonymous with verbatim recitation, however.  Portions of an agreement irrelevant to the credibility determination or potentially misleading to the jury should, on timely and specific request, be

---

[52] *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[53] Beard also contends that the prosecutor's failure to correct Branson's testimony that the trial judge, not Branson's sentencing judge, assess Branson's truthfulness in testifying when imposing sentence constituted prosecutorial misconduct.  This argument is considered and rejected below in subpart IV, E.

excluded." (*People v. Fauber, supra,* 2 Cal.4th at p. 823.)  "Although the exposure through cross-examination of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of confrontation, the confrontation clause does not prevent a trial court from imposing reasonable limits on a defense counsel's inquiry into the potential bias of a prosecution witness . . . .  [¶]  The confrontation clause simply guarantees an opportunity for effective cross-examination; it does not assure a chance to cross-examine in whatever way, and to whatever extent, the defense might wish."  (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1385-1386.)

"On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679 [89 L.Ed.2d 674, 683].)  "As long as the cross-examiner has the opportunity to place the witness in his or her proper light, and to put the weight of the witness's testimony and credibility to a reasonable test which allows the fact finder fairly to appraise it, the trial court may permissibly limit cross-examination to prevent undue harassment, expenditure of time, or confusion of the issues.  [Citations.]  Thus, a trial court's exercise of discretion to exclude evidence does not implicate or infringe a defendant's federal constitutional right to confront the witnesses against him, unless the prohibited cross-examination might reasonably have produced a significantly different impression of the witness's credibility."  (*In re Ryan N., supra,* 92 Cal.App.4th at p. 1386.)

[Beard] cannot meet this standard.

The trial court precluded [Beard] from introducing evidence outlining the specifics of the maximum sentence Branson initially faced and the sentencing range under the plea agreement, concluding that this information was not relevant and was potentially confusing to the jury.  The court noted, however, that defense counsel could nonetheless "talk about the fact that [Branson] was facing significantly more time without describing what that time was.  I think that you can say that there is a range of time that he is facing and he would be sentenced on the lower end if his testimony was found to be truthful by the trial judge; and if found to be untruthful, he would be looking at the upper range."

Defense counsel responded that he had not intended to talk about the maximum and minimum times, and added that he agreed it would not be proper to "argue, that gee, you are facing a life sentence, aren't you, type of thing.  I think that would be improper."

Having agreed with these limitations, [Beard] cannot now assert that the court improperly curbed his cross-examination by refusing to permit questioning about the potential punishment faced by Branson.  Any claim of error is forfeited.  Moreover, the court properly weighed the potential for confusion and prejudice against the probative value of this evidence.  There was no abuse of discretion. (See *In re Ryan N., supra,* 92 Cal.App.4th at p. 1385.)

[Beard] next asserts the court erred in refusing to permit him to ask Branson about the crimes to which he entered his no contest plea.  [Beard] asserted the pleas of no contest to digital penetration and statutory rape were inconsistent with his trial testimony.  The court concluded that Branson may have entered a plea to the charge of digital penetration based on his culpability as a principal rather than as the actual perpetrator and therefore his plea was not inconsistent with his trial claim that he did not place his fingers in the victim's vagina.

The court found "the somewhat more troubling issue" to be the possible inconsistency between Branson's plea of no contest to statutory rape and his trial testimony, in which he equivocated as to whether penetration occurred.  The court concluded, "But in analyzing all of the arguments made by both sides, I think that the probative value of going into the specifics of what he pled to and why, and the collateral issues that they would raise, is outweighed by the consumption of time and the risk of confusing the jury and the prejudicial effect.  So I'm not going to allow you any further inquiry in that area, and I'll note your objection for the record."

In arguing that the trial court's ruling was erroneous, [Beard] fails to recognize that the court's decision was predicated on Evidence Code section 352.  [Beard] asserts only that he "should have been permitted to confront Branson with his plea."  He does not argue that the court abused its discretion in weighing the probative value of this evidence against its potential for confusion, prejudice, and consumption of time.  And absent such a showing, the court's ruling cannot be disturbed.[54]

It is well-settled law that a criminal defendant has a constitutional right to present a defense.[55]  This right is not, however, unfettered or without limitation.  "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."[56]  This latitude, however, has limits.  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful

---

[54] *Beard*, 2008 WL 889433 at *8-*9.

[55] *Crane*, 476 U.S. at 690.

[56] *United States v. Scheffer,* 523 U.S. 303, 308 (1998); *see Crane,* 476 U.S. at 689-690; *Marshall v. Lonberger,* 459 U.S. 422, 438, n.6, (1983); *Chambers v. Mississippi,* 410 U.S. 284, 302-303 (1973); *Spencer v. Texas,* 385 U.S. 554, 564 (1967).

opportunity to present a complete defense.'"[57]  This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"[58]  The Constitution clearly "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."[59]  The Supreme Court has repetitively held that the Constitution permits judges "to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"[60]

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code § 352, permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against

---

[57] *Crane,* 476 U.S. at 690 (quoting *California v. Trombetta,* 467 U.S. 479, 485 (1984)).

[58] *Scheffer,* 523 U.S. at 308 (quoting *Rock v. Arkansas,* 483 U.S. 44, 58, 56 (1987)).

[59] *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (citing Fed. R. Evid. 403 as an example).

[60] *Crane,* 476 U.S. at 689-690 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)) (ellipsis and brackets in original); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (plurality opinion) (terming such rules "familiar and unquestionably constitutional").

admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[61]  California employs a similar rule.[62]

In this case, the California Court of Appeal applied the same standards as are applied in federal cases.  Consequently, this Court cannot say that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[63]  Beard is not entitled to relief under his fourth ground.

<u>Ground 12:  Fifth Amendment Claim by Unindicted Accomplice</u>

According to Beard, his younger brother, an unindicted accomplice, was present during the entire night.  As such, the brother was a percipient witness to the actions underlying Beard's conviction, as well as the events that occurred during Beard's arrest and transport to jail, including the conversation that occurred during the transport.[64]  Beard wanted to call his brother as a defense witness.[65]  Beard's brother, a juvenile at the time and represented by appointed counsel, claimed "blanket" Fifth Amendment immunity.  This claim was granted and the brother

---

[61] *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and County of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).

[62] *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("[w]e review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

[63] 28 U.S.C. § 2254(d).

[64] Respondent has not controverted those "facts."  Consequently for the purpose of ruling on this issue, this Court accepts them as being true.

[65] Thus, this is not a case in which Beard's right to confront witnesses against him was infringed, such as where a witness invokes the Fifth Amendment denying an opportunity for effective cross-examination.  *See, e.g., Douglas v. Alabama*, 380 U.S. 415 419-20 (1965).

was excused from testifying.  Beard contends that this was improper.  Beard advances two

arguments.  First, Beard argues that prior to Beard's trial, his brother, who was 14 at the time,

was freed from any actual threat of prosecution.  Second, Beard argues that he should have been

permitted to compel his brother to testify and invoke his Fifth Amendment right on a question by

question basis.  Beard raised this claim in his habeas petitions to the state courts.  In denying

Beard relief, the El Dorado County Superior Court held:

> As a second ground for relief, Petitioner alleges he was denied his right to
> present a defense in that the witness asserted a Fifth Amendment privilege.
> Petitioner's brother was an unindicted accomplice and the Court after considering
> argument granted blanket privilege.  That issue was within the court record and
> would not be subject to writ proceedings.  The issue could have been raised on
> appeal.  Petitioner fails to make the heavy burden of grounds for relief (*People v.
> Duvall* 9 Cal.4th 464, 471.)  The witness has a right to assert a Fifth Amendment
> privilege.[66]

It clearly appears from the decision of the El Dorado County Superior Court that denial of

relief was based upon procedural grounds.  Respondent has not raised a defense that this claim is

procedurally barred.[67]  Accordingly, it is deemed waived.[68]  It also appears, however, that the El

Dorado County Superior Court also determined that the claim lacked merit, i.e., that the witness

was entitled to raise the Fifth Amendment privilege.

A state court is not required to give reasons before its decision can be deemed to be

"adjudicated on the merits."[69]  When there is no reasoned state court decision denying an issue

presented to the state, "it may be presumed that the state court adjudicated the claim on the

---

[66] Lodged Document No. 12, p. 2.

[67] *See* Rules—Section 2254 Cases, Rule 5(b).

[68] *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003).

[69] *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 785 (2011).

22

merits in the absence of any indication or state-law procedural principles to the contrary."[70]  "The presumption may be overcome when there is reason to think that some other explanation for the state court's decision is more likely."[71]  In this case, although somewhat cryptic, the El Dorado County Superior Court's statement on the merits is sufficient to support the presumption.  Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[72]  In so doing, because it is not clear that it did not so do, the Court presumes that the state-court decision rested on federal grounds,[73] giving the presumed decision the same deference as a reasoned decision.[74] The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[75]

---

[70] *Id*. at ___, 131 S. Ct. at 784-85.

[71] *Id.* at ___, 131 S. Ct. at 785.

[72] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[73] *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991).

[74] *Richter*, 562 U.S. at ___, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[75] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[76]

The thrust of Beard's argument on this issue is that, as a practical matter, there was no realistic probability that his brother faced criminal prosecution.  Although the protection afforded by the Fifth Amendment is broadly construed,[77] it is well-settled law that a self-incrimination claim under the Fifth Amendment must be based upon "some real danger[] of incrimination, not merely a remote or speculative possibility."[78]  The Fifth Amendment is concerned with the danger that a witness forced to give testimony may be subjected to criminal penalties as a result of that testimony.[79]  It protects those who, while innocent, may have a reasonable fear of prosecution by being ensnared by ambiguous circumstances.[80]  "The protection does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution."[81] "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a

---

[76] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[77] *See Maness v. Meyers*, 419 U.S. 449, 461 (1975).

[78] *See Zicarelli v. N. J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972) (citing *Mason v. United States*, 244 U.S. 362 (1917); *Heike v. United States*, 227 U.S. 131 (1913); *Brown v. Walker*, 161 U.S. 591 (1896); *Queen v. Boyes*, 121 Eng. Rep. 730 (Q.B. 1861)).

[79] *See Ullman v. United States*, 350 U.S. 422, 438-39 (1956).

[80] *Slochower v. Bd. of Higher Ed. of City of N.Y.*, 350 U.S. 551, 557-58 (1956).

[81] *Maness*, 419 U.S. at 461 (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

link in the chain of evidence needed to prosecute the claimant for a federal crime." It also encompasses testimony that may only tend to incriminate.[82]

The El Dorado County Superior Court found that Beard's brother was entitled to assert a Fifth Amendment claim. Implicit in that determination is that the brother, in fact, faced a real danger of being subjected to a criminal prosecution based upon his testimony. That implied finding is binding on this Court unless Beard rebuts it with clear and convincing evidence.[83] Beard's argument, which is based upon his interpretation of the extent to which his brother faced potential prosecution, does not satisfy that standard.

Beard's argument that his brother should have been compelled to invoke his Fifth Amendment right on a question-by-question basis is also without merit. The Supreme Court has made clear that a witness may not be compelled to pick and chose those aspects of his testimony to which to invoke his Fifth Amendment privilege and those to which he does not.[84] Once a witness elects to waive the privilege as to an issue, the witness may not invoke the privilege where the response to a question concerning the details would not further incriminate the witness.[85] A witness must be given considerable latitude in deciding when to stop responding to questions, or whether to respond to any questions. Otherwise, invoking the privilege too soon could be contempt of court, while invoking it too late would inadvertently waive the privilege.[86]

---

[82] *Emspak v. United States*, 349 U.S. 190, 197 (1955) (citing *Hoffman*).

[83] 28 U.S.C. § 2254(e)(1); *Richter*, 562 U.S. at ___, 131 S. Ct. at 784-85; *Miller-El*, 537 U.S. at 340.

[84] *See Rogers v. United States*, 340 U.S. 367, 372-74 (1951); *Federal Deposit Ins. Corp. v. Sovereign State Capital, Inc.*, 557 F.2d 683, 687 (9th Cir. 1977).

[85] *Rogers*, 340 U.S. at 373; *Matter of Seper*, 705 F.2d 1499, 1501-02 (9th Cir. 1983).

[86] *Seper*, 705 F.2d at 1501.

25

A court may recognize a witness's blanket privilege against self-incrimination where the court, based on its knowledge of the case, and the testimony expected from the witness can conclude that the witness could legitimately refuse to answer essentially all relevant questions.[87]

In his Traverse, Beard suggests that his brother could have been given immunity or something.  This suggestion lacks merit.  For due process to require that a court compel use immunity for a witness, the defendant must make two showings.  First, that the testimony is relevant.  Second, that the prosecution either: (a) intentionally caused the brother to invoke the Fifth Amendment with the purpose of distorting the fact finding process; or (b) granted immunity to a government witness to obtain that witness's testimony, but denied immunity to the brother in a situation where the brother's testimony would have directly contradicted that of the government's witness.[88]

While Beard has clearly satisfied the first prong, he has failed to satisfy either alternative of the second.  There is no evidence that the prosecution in this case caused Beard's brother to invoke his Fifth Amendment right (first prong).  Although the brother's testimony might have contradicted in some respects Branson's testimony, Branson was not given immunity (second prong).

Based upon the record, this Court cannot say that the assumed decision of the El Dorado County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the

---

[87] *See United States v. Flores-Blanco*, 623 F.3d 912, 918 (9th Cir. 2010).

[88] *Id.*

state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[89]

## C.      Jury Instructions

Ground 6: "Natural and Probable Cause" Instruction

At the request of the prosecution, the jury was instructed that Beard could be convicted as the aider and abettor of the sex offenses if those crimes were the "natural and probable" consequences of his actions.  Beard contends that this instruction was erroneous.  The California Court of Appeal held that Beard was mistaken:

> *A. Instruction on the Natural and Probable Consequences Doctrine*
> [Beard] contends that the court erred in instructing the jury on the natural and probable consequences doctrine pursuant to CALJIC No. 3.02.  Specifically, he asserts that his convictions for the sex offenses cannot be based on the theory that these crimes were the reasonably foreseeable consequences of the aggravated kidnapping because he was the perpetrator—not the aider and abettor—of that intended offense.  [Beard] is mistaken.  "Under California law, a person who aids and abets a confederate in the commission of a criminal act is liable not only for that crime (the target crime), but also for any other offense (nontarget crime) committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted."  (*People v. Prettyman* (1996) 14 Cal.4th 248, 254.)
> After giving general instructions on aiding and abetting, the trial court instructed the jury pursuant to CALJIC No. 3.02 that liability for rape could also be predicated on the natural and probable consequences doctrine if the jury made the following  findings beyond a reasonable doubt: "[O]ne, the crime [of] kidnap to commit the rape or unlawful sexual penetration, Count One, was committed; two, that the defendant aided and abetted the commission of that crime; three, . . . that a co-principal in the crime committed the crime . . . of rape of an unconscious person, Count Two . . .; and four, the crime . . . of rape of an unconscious person [Count Two is a] natural and probable consequence of the commission of the crime of [kidnapping] to commit rape or unlawful sexual penetration, Count One."
> This instruction concluded that the jury had to be "satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the

---

[89] 28 U.S.C. § 2254(d).

commission of an identified and defined target crime and that the crime . . . of rape of an unconscious person, Count Two . . . [is a] natural and probable consequence[ ] of the commission of that target crime."

In closing argument, the prosecutor argued that [Beard] aided and abetted the charged offenses, and then addressed an alternative theory of liability under the alternative natural and probable consequences doctrine. The prosecutor argued: "And one way this plays a role in this particular case and there is a variety of ways it can, one way would be if you found that the defendant did, in fact, participate with Luke Branson in picking up and carrying the victim out into the woods. And then he left. [¶] Well, if he's guilty of kidnapping for purposes of sexual assault, rape of an unconscious person, sexual penetration of an unconscious person, then the fact that Luke Branson committed that crime is a natural and probable consequence of that kidnapping. And he can be guilty of the kidnapping whether or not that intended end result occurs. But he's also responsible, even if it doesn't, or even if he is gone and it does. And it's a natural and probable consequence."

[Beard] asserts that the natural and probable consequences doctrine is inapplicable if he committed, rather than aided and abetted, the intended act of aggravated kidnapping. Noting that the prosecutor theorized and Branson testified that [Beard] actually committed the kidnapping and did not aid and abet someone else, [Beard] contends the court erred in instructing the jury on the natural and probable consequences theory pursuant to CALJIC No. 3.02. (See *People v. Prettyman, supra,* 14 Cal.4th at p. 269.)

However, the evidence was not so clear cut. Branson knew what [Beard] intended when [Beard] picked the victim up and carried her to a clearing, saying "[L]et's go fuck her." Branson accompanied him and then waited at the site while [Beard] went to get condoms. Given this evidence, the jury could have concluded that [Beard] and Branson acted together in committing an aggravated kidnapping, with each aiding and abetting the other. (See *People v. Cooper* (1991) 53 Cal.3d 1158, 1164.) In that case, instructions on aiding and abetting under the natural consequences doctrine would have been proper.

But more importantly, [Beard] is wrong in his apparent belief that a perpetrator cannot be held liable for the natural and probable consequences of an intended crime. A perpetrator and an aider and abettor "are *equally* liable for the natural and foreseeable consequences of their crime. Both the perpetrator and the aider and abettor are principals, and *all* principals are liable for the natural and reasonably foreseeable consequences of their crimes." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1376; accord *People v. Culuko* (2000) 78 Cal.App.4th 307, 329-330 .)

If [Beard] kidnapped the victim for the purpose of committing sex offenses, his liability for the ensuing sexual assault could appropriately be based on a natural and probable consequences theory. To the extent that the instruction erroneously limited this theory to aiders and abettors, [Beard] can only have benefitted. If the jury concluded that he did not aid and abet the kidnapping, it

would not have relied on CALJIC No. 3.02 for a basis of liability.  The instruction would have been inapplicable, and [Beard] cannot demonstrate prejudice.

Finally, in any event, the evidence of [Beard's] involvement in the sexual offenses was overwhelming, as already detailed.  [Beard] aided and abetted count 2, rape of an unconscious person, by obtaining condoms and holding the victim during the assault.  The evidence also established that he was the sole perpetrator of count 3, penetration of an unconscious victim.  Under these circumstances, there was no reasonable likelihood of a different verdict in the absence of the challenged instruction.  The error, if any, was harmless.  (See *People v. Olguin, supra,* 31 Cal.App.4th at p. 1378.)[90]

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[91]  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.[92]  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.[93]

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right and may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.[94]  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the

---

[90] *Beard*, 2008 WL 889433 at *11-*13.

[91] *Boyde v. California,* 494 U.S. 370, 380 (1990).

[92] *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

[93] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis*, 471 U.S. at 324 n.9 (1985).

[94] *Estelle*, 502 U.S. at 72.

constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.[95]  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."[96]  Because it is not enough that there is some slight *possibility* that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.[97]

In this case, the California Court of Appeal held that the challenged instruction correctly reflected California law on the subject.  That determination is beyond the purview of this Court in a federal habeas proceeding.[98]  Beard has failed to present a question of constitutional dimension and is not entitled to relief under his sixth ground.

Ground 7: Lesser-Included Offense Instructions

The trial court declined Beard's request that the jury be instructed on the lesser-included offenses of simple kidnapping, false imprisonment, and attempted rape.  Beard contends that this was erroneous.  On direct appeal, the California Court of Appeal disagreed with Beard.  In rejecting Beard's claim that the jury should have been instructed on the lesser included charge of simple kidnapping, the appellate court held that under the evidence the only crime of which Beard could be guilty of was aggravated kidnapping.  The appellate court further held that the evidence did not support either false imprisonment or attempted rape.[99]

----

[95] *Id*. at 72-73.

[96] *Id*.

[97] *Waddington v. Sarausad*, 555 U.S. 179, ___, 129 S. Ct. 823, 831-32 (2009) (internal quotation marks and citations omitted).

[98] *See Cooke*, 562 U.S. at ___, 131 S. Ct at 863; *Estelle*, 502 U.S. at 67-68; *Walton*, 497 U.S. at 653; *Engle*, 456 U.S. at 119.

[99] *Beard*, 2008 WL 889433 at *14-*16.

30

Supreme Court precedent does not require a trial court to instruct the jury on a lesser included offense in a non-capital case,[100] and the Ninth Circuit has concluded that such a claim is not cognizable on federal habeas review.[101]  Because Beard has failed to raise an issue of constitutional dimension, he is not entitled to relief under his seventh ground.

Ground 8:  *Mayberry* Instruction

Beard contends that the trial court should have *sua sponte* instructed the jury that if he had a reasonable, yet mistaken belief, that the victim had consented to have sexual intercourse, it was a defense against the aggravated kidnapping and rape charges (referred to in California as the "*Mayberry* Instruction").  The California Court of Appeal, after extensively reviewing the evidence, rejected Beard's argument, holding that, because there was no evidence that Beard relied on a mistake-of-fact defense and no evidence to support such a defense, the trial court was under no obligation to give a *Mayberry* instruction.[102]

A *Mayberry* instruction is strictly a creature of California law.  Consequently, it is beyond the purview of this Court in a federal habeas proceeding.[103]  As with his sixth ground, Beard has failed to present a question of constitutional dimension and is not entitled to relief under his eighth ground.

---

[100] *Beck v. Alabama,* 447 U.S. 625, 638 (1980).

[101] *Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir. 2000); *see also* 28 U.S.C. § 2254(d)(1); *Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

[102] *Beard*, 2008 WL 889433 at *13-14.

[103] *See Cooke*, 562 U.S. at ___, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68; *Walton*, 497 U.S. at 653; *Engle*, 456 U.S. at 119.

D.     **Sentencing**

Ground 9:  Violation of California Penal Code § 654

The trial court imposed sentences on all three counts of which Beard was convicted.

Beard contends that this violated § 654 of the California Penal Code.  The California Court of

Appeal rejected Beard's arguments, holding that the sentence in this case did not violate § 654's

proscription against double punishment.[104]  Beard raises solely an issue of state law beyond the

purview of this Court in a federal habeas proceeding.[105]

To the extent that Beard's petition may be construed as an Eighth Amendment "cruel and

unusual punishment" claim, it also fails.  Although Beard may have received a severe sentence

and the Eighth Amendment prohibits sentences that are grossly disproportionate to the crime,

"outside the context of capital punishment, successful challenges to the proportionality of

particular sentences will be exceedingly rare."[106]  Balanced against the proportionality principle is

the corollary principle that the determination of prison sentences is a legislative prerogative not

within the province of the courts.[107]  The Ninth Circuit has held that "'only extreme sentences

that are grossly disproportionate to the crime' violate the Eighth Amendment."[108]  Given the

decisions of the Supreme Court and the Ninth Circuit, this Court cannot say that the sentence

---

[104] *Beard*, 2008 WL 889433 at *16-*17.

[105] *See Cooke*, 562 U.S. at ___, 132 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68; *Walton*, 497 U.S. at 653; *Engle*, 456 U.S. at 119.

[106] *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alterations and emphasis omitted).

[107] *Rummel v. Estelle*, 445 U.S. 263, 275-76 (1980).

[108]  *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (quoting *United States v. Bland,* 961 F.2d 123, 129 (9th Cir. 1992).

imposed on Beard in this case violated the Eighth Amendment.[109]   Beard is not entitled to relief

under his ninth ground.

Ground 10:  *Apprendi-Blakely-Cunningham*

Beard contends that imposition of the upper term violated his rights to a jury trial under

the Sixth Amendment as applied in *Apprendi-Blakely-Cunningham*.   The California Court of

Appeal disagreed, holding:

> *Imposition of Upper Term*
>
> [Beard] contends the court's imposition of the upper term violated his
> right to a jury trial as guaranteed by the Sixth Amendment to the United States
> Constitution. (*Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435];
> *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403] (*Blakely*);
> *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856]
> (*Cunningham*).)  We disagree.
>
> In *Blakely,* the United States Supreme Court held that any circumstance "
> '[o]ther than the fact of a prior conviction'" (*Blakely, supra,* 542 U.S. at p. 301
> [159 L.Ed.2d at p. 412] ) that is relied on by a trial court to increase the penalty
> for a crime beyond the statutory maximum must be tried before a jury and proved
> beyond a reasonable doubt.  (*Id.* at pp. 301, 303 [159 L.Ed.2d at pp. 412, 413].)
> In *Cunningham,* the United States Supreme Court concluded that the middle term
> is the statutory maximum under California's determinate sentencing scheme
> absent proper proof of other factors.  (*Cunningham, supra,* 549 U.S. at p. ---- [166
> L.Ed.2d at p. 876].)
>
> However, in *People v. Black* (2007) 41 Cal.4th 799 (*Black*), decided
> subsequent to *Cunningham,* the California Supreme Court held that "imposition
> of the upper term does not infringe upon the defendant's constitutional right to
> jury trial so long as one legally sufficient aggravating circumstance has been
> found to exist by the jury, has been admitted by the defendant, or is justified based
> upon the defendant's record of prior convictions." (*Black, supra,* 41 Cal.4th at p.
> 816.)  This is so because "[u]nder California's determinate sentencing system, the
> existence of a single aggravating circumstance is legally sufficient to make [a]
> defendant eligible for the upper term.  [Citation.]  Therefore, if one aggravating
> circumstance has been established in accordance with the constitutional
> requirements set forth in *Blakely,* the defendant is not 'legally entitled' to the
> middle term sentence, and the upper term sentence is the 'statutory maximum.'"
> (*Id.* at p. 813.)  The court also held that the exception to the requirement for a jury

---

[109] *See Rummel*; *Solem*; *Hamelin v. Michigan*, 501 U.S. 957 (1991) .

trial for "'the fact of a prior conviction'" (*Blakely, supra,* 542 U.S. at p. 301 [159 L.Ed.2d at p. 412] ) "include[s] not only the fact that a prior conviction occurred, but also other related issues that may be determined by examining the records of the prior convictions," such as whether those convictions are numerous or of increasing seriousness.  (*Black, supra,* at p. 819.)

The probation report prepared for [Beard's] sentencing in the present case outlined various aggravating factors, including [Beard's] prior juvenile and adult record.  This record reflected 11 felony and misdemeanor offenses between 1996 and 2002, including possession or manufacture of an incendiary device, various drug offenses, driving while intoxicated, burglary, vehicle theft, receiving stolen property, and unlawful sexual intercourse.

Citing California Rules of Court, rule 4.421(b)(2), the trial court explicitly listed [Beard's] criminal history as a factor justifying the imposition of the upper term.  Under *Black,* the court could properly consider this factor without a jury finding. There was no error in imposing the aggravated sentence.[110]

In *Cunningham*, the Supreme Court did not invalidate upper-term sentences imposed as a result of prior convictions.[111]  Under *Black II*, the existence of only one aggravating factor that satisfies the Sixth Amendment, i.e., been found to exist by a jury, admitted by the defendant, or is justified based upon the defendant's record of prior convictions, is necessary to set the upper term as the maximum sentence.[112]  This is consistent with the Sixth Amendment requirement embodied in the *Apprendi*-line of cases.[113]  Although Beard does not challenge the imposition of consecutive determinate prison terms on the non-life convictions, the Court notes that the Sixth Amendment does not preclude the imposition of consecutive sentences based upon the findings of fact by a judge rather than a jury.[114]

---

[110] *Beard*, 2008 WL 889433 at *17-*18.

[111] *Cunningham*, 549 U.S. at 288-89.

[112] *People v. Black*, 161 P.3d 1130, 1140-41 (Cal. 2007) ("*Black II*").

[113] *See Butler v. Curry*, 528 F.3d 624, 643 (9th Cir. 2008).

[114] *Oregon v. Ice*, 555 U.S. 160, ___, 129 S. Ct. 711, 717-18 (2009).

The decision of the California Court of Appeal was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.[115]   Accordingly, Beard is not entitled to relief under his tenth ground.

**E.     Prosecutorial Error**

"To warrant habeas relief, prosecutorial misconduct must 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'"[116]

> In determining whether a comment rendered a trial constitutionally unfair, factors [the court] may consider are whether the comment misstated the evidence, whether the judge admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to rebut the comment, the prominence of the comment in the context of the entire trial and the weight of the evidence.[117]

In essence, what is required is that reviewing courts consider the equivalent to evaluating whether there was a "reasonable probability" of a different result.[118]

Ground 4:  Failure to Correct Accomplice's Misstatement

At trial, Branson incorrectly testified that the trial judge, not his sentencing judge, would be the one who assessed the truthfulness of his testimony.  As part of his fourth ground, Beard contends that the failure to correct this erroneous testimony constituted prosecutorial misconduct. The California Court of Appeal rejected Beard's argument, holding:

> [. . . .]  [Beard] contends that additional error occurred when the prosecutor failed to correct Branson's misstatement that the trial judge, rather than

---

[115] 28 U.S.C. § 2254(e).

[116] *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

[117] *Hein v. Sullivan*, 601 F.3d 897, 912-13 (9th Cir. 2010); *see Darden*, 477 U.S. at 182.

[118] *See Hein*, 601 F.3d at 914-15.

35

Branson's sentencing judge, would be the one to assess his truthfulness in
testifying when imposing sentence.  No constitutional violation occurred.

* * * *

     [Beard] raises one final claim involving the plea agreement.  At trial,
Branson testified that Judge Kingsbury, the trial judge, would be the person to
decide his truthfulness under the terms of the plea agreement.  In reality, it was
Branson's sentencing judge who would make that determination.  [Beard]
contends that this distinction was important because the jury would assume that
the credibility determination would be made by the judge who heard Branson's
testimony, not someone who would rely on a cold record and the prosecutor's
assessment.  [Beard] contends that the prosecutor is "under an affirmative duty to
ensure that prosecution witnesses do not misrepresent the nature of inducement
that they have received in exchange for their testimony.  That duty was breached
here when Branson was allowed to mislead the jury to believe that Judge
Kingsbury would decide whether his trial testimony was truthful."

     [Beard's] claim of error is meritless.  Not only did defense counsel fail to
raise this claim in the trial court, he reinforced Branson's testimony by asking him
whether "Judge Kingsbury is going to make the decision as to how much time
you're going to spend in prison" and reaffirming with Branson that Branson
entered his plea in front of a different judge, not Judge Kingsbury.  Defense
counsel was just as responsible as the prosecutor for any "misleading" of the jury.

     But more importantly, [Beard's] claim that this "misconduct" was
prejudicial is unpersuasive.  The references to the respective roles of the judge and
prosecutor in assessing Branson's credibility were fleeting, and defense counsel
explicitly told the jury that it was a judge, not the prosecutor, who would make the
determination about punishment.  Defense counsel effectively cross-examined
Branson and challenged his version of events.  Given the overwhelming evidence
against [Beard], there is no likelihood that a different result would have occurred
had the prosecutor corrected Branson's mistake.  The prosecutor's error, if any,
was harmless.[119]

It is not necessary to decide if Branson's confusion regarding the judge who would

ultimately evaluate his credibility was error.  The California Court of Appeal correctly noted, if

there was error, that error was harmless, i.e., did not have a substantial and injurious effect or

influence in determining the outcome.[120]  The decision of the California Court of Appeal was not

---

[119] *Beard*, 2008 WL 889433 at *8-*10.

[120] *Fry*, 551 U.S. at 121.

36

Case 2:09-cv-03508-JKS   Document 33   Filed 08/05/11   Page 37 of 50


contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.[121]   Beard is not entitled to relief under his fourth ground.

Ground 11:  Violation of Plea Agreement

Beard contends that the charges of which he was convicted in this case were resolved in a prior plea agreement, referred to as the "Global Settlement."  According to Beard, he agreed to this "Global Settlement" on the premise that the State would not re-file the charges resolved in that agreement.  Beard argues that by reneging on the "Global Settlement," his rights were violated under the Sixth and Fourteenth Amendments.  Beard raised this claim in his state habeas proceedings.  The El Dorado County Superior Court rejected Beard's arguments, holding:

> Petitioner alleges various grounds for relief by way of writ.
> First, his due process rights were violated in that this case had been settled as part of a global resolution of other cases that had been resolved.  This Court takes judicial notice of its own files under Evidence Code 452, et seq., and has reviewed the files in cases P00CRF0143, P??CRM0553, P02CRM1133, P02CRM1541, P02CRM1071, P??1587, P99CRF0237, 51911QTMB, P03CRM0707 and finally 3163MB.  The global settlement of those cases does not include the factual allegation in the underlying case.  As such, the Court finds the facts of case P03CRF0698 were not involved in any case that involved a global settlement.  The same facts were alleged in another case, P01CRF0234, but the People were unable to proceed and the case was dismissed without prejudice when the People's witness was on active military duty in the Middle East. That occurred February 2, 2002.  The global settlement occurred June 5, 2003. Petitioner fails to state with particularity facts upon which relief is sought.  (*In re Swain* 34 Cal.2d 300, 303.)[122]

---

[121] 28 U.S.C. § 2254(e).

[122] Lodged Document No. 12, pp. 1-2.

It is clearly the law that a plea agreement is a contract that binds the State.[123]  If the prosecution breached the agreement, the case must be remanded to the state courts for a determination of the appropriate remedy under the circumstances,[124] which, in this case, is most likely specific performance.[125]  The proper interpretation and effect of the agreement between the State of California and Beard in this case is a matter governed by California contract law,[126] a matter that, as noted above, is beyond the purview of this Court in a federal habeas proceeding.[127] "A plea agreement violation claim depends upon the actual terms of the agreement, not the subjective understanding of the defendant . . . ."[128]  The El Dorado County Superior Court found that, Beard's argument that his acceptance was premised on his understanding to the contrary notwithstanding, the "Global Settlement" did not encompass the charges brought in this case. This Court is bound by that finding unless Beard controverts it by clear and convincing evidence,[129] a burden Beard has failed to carry.

The decision of the El Dorado County Superior Court was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was it based on an unreasonable determination of the facts

---

[123] *See Santobello v. New York*, 404 U.S. 257, 262-63 (1971).

[124] *Id.*

[125] *See Buckley v. Terhune*, 441 F.3d 688, 699 (9th Cir. 2006).

[126] *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987).

[127] *See Cooke*, 562 U.S. at ___, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68; *Walton*, 497 U.S. at 653; *Engle*, 456 U.S. at 119.

[128] *In re Honesto*, 29 Cal. Rptr.3d 653, 660 (Cal. App. 2005).

[129] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell, supra*.

in light of the evidence presented in the State court.[130]   Accordingly, Beard is not entitled to relief

under his eleventh ground.

**F.      Ineffective Assistance of Counsel**

Under *Strickland*, to demonstrate ineffective assistance of counsel, Beard must show both

that his counsel's performance was deficient and that the deficient performance prejudiced his

defense.[131]   A deficient performance is one in which counsel made errors so serious that counsel

was not functioning as the counsel guaranteed by the Sixth Amendment.[132]   Beard must show that

defense counsel's representation was not within the range of competence demanded of attorneys

in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness,

the result would have been different.[133]   An analysis that focuses "solely on mere outcome

determination, without attention to whether the result of the proceeding was fundamentally unfair

or unreliable, is defective."[134]

---

[130] 28 U.S.C. § 2254(e).

[131] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[132] *Id*.

[133] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[134] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

*Strickland* and its progeny do not mandate that this Court act as a "Monday morning

quarterback" in reviewing tactical decisions.[135]  Indeed, the Supreme Court admonished in

*Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or
> adverse sentence, and it is all too easy for a court, examining counsel's defense
> after it has proved unsuccessful, to conclude that a particular act or omission of
> counsel was unreasonable.  A fair assessment of attorney performance requires
> that every effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.  Because of the difficulties
> inherent in making the evaluation, a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the presumption that, under the
> circumstances, the challenged action might be considered sound trial strategy.
> There are countless ways to provide effective assistance in any given case.  Even
> the best criminal defense attorneys would not defend a particular client in the
> same way.[136]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold."  *Schriro,
> supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general
> standard, a state court has even more latitude to reasonably determine that a
> defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S.
> 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule
> application was unreasonable requires considering the rule's specificity.  The
> more general the rule, the more leeway courts have in reaching outcomes in case-
> by-case determinations").[137]

---

[135] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[136] 466 U.S. at 689 (internal citations and quotation marks omitted).

[137] *Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S. Ct. 1411, 1420 (2009).

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[138]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,][which] is different from an *incorrect* application of federal law."[139]

> [. . . .]  Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[140]

Ground 13:  Conflicted Counsel

As summarized by the El Dorado County Superior Court, the facts underlying this claim are:

> On July 5, 2001, attorney James Clark was relieved as [Beard's] court-appointed counsel and was replaced by Steve Bailey.  Mr. Bailey then acted as [Beard's] defense counsel throughout the entire trial.  However, on January 1, 2002, at a Pre-Prelim, [Beard] was represented by Mr. P. Tieman.  [Beard] was in custody, and met Mr. Tieman for 15 to 20 minutes in a court holding cell.  Mr. Tieman informed [Beard] that he was acting as substitute counsel for Mr. Bailey, and questioned [Beard] extensively about various aspects of the case including [Beard's] claims for defense, and especially the role of [Beard's] co-indictee, a Luke Branson.  Mr. Tieman then acted as trial counsel for Luke Br4anson [*sic*].  Branson later acted as key witness against [Beard] and received a highly

---

[138] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[139] *Richter*, 562 U.S. at ___, 131 S. Ct. at 785 (emphasis in the original).

[140] *Id.* at ___, 131 S. Ct. at 786.

advantageous plea deal for doing so.  The main points of the most serious charges were presented as a test of truths between [Beard] and Branson.[141]

Beard argues that, because counsel was also counsel for his accomplice, Branson, his rights under the Fourth, Sixth, and Fourteenth Amendments were violated.  The El Dorado County Superior Court rejected Beard's arguments, holding:

> As a third ground for relief is the violation of [Beard's] constitutional rights, 4th, 5th, and 6th, in that co-counsel for the co-defendant appeared as substitute counsel for him.  The court record does not support such a contention.  His counsel of record was James Clark.  Mr. Clark was relieved and Mr. Steven Bailey was his counsel of record.  On March 15, 2004, at a pre- preliminary hearing, Attorney Peter Tiemann made a special appearance for [Beard], as well as for the co-defendant.  At no time after that date was the subject ever raised.  This is a common practice for co-counsel to appear for the limited purpose of confirming a court date.  Clearly, this issue could have been raised on appeal.  See *In re Clark* 5 Cal.4th 750, 767.  The Court deems it waived.[142]

It is clear that the El Dorado County Superior Court denied relief on procedural grounds. Respondent has not, however, raised procedural bar as an affirmative defense.[143]  It is, therefore, deemed waived.[144]  Normally, when there is no reasoned state-court decision denying an issue presented to the state "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[145]  "The presumption may be overcome when there is reason to think that some other explanation for the state court's decision is more likely."[146]  In this ground, unlike the twelfth ground, there is no

---

[141] Docket No. 1, p. 13.

[142] Lodged Document No. 12, pp. 2-3.

[143] *See* Rules—Section 2254 Cases, Rule 5(b).

[144] *See Bennett*, 322 F.3d at 585.

[145] *Richter*, 562 U.S. at ___, 131 S. Ct. at 784-85.

[146] *Id.* at  ___, 131 S. Ct. at 785.

indication that the El Dorado County Superior Court denied relief on other than procedural grounds. Consequently, the presumption has been overcome. If the presumption does not apply, there is no state court decision to which to defer, and this Court must review the issue de novo.[147]

Prejudice may be presumed when counsel "actively represents conflicting interests."[148] Thus, the precise question presented is whether representing both Branson and Beard at the pre-preliminary hearing constitutes representation of "conflicting interests." Even if it did, however, to constitute an "actual conflict" the conflict must have adversely affected counsel's performance, not be merely a theoretical division of loyalty.[149] The El Dorado County Superior Court found that the appearance involved was a simple preliminary matter at which joint representation routinely occurred. This Court is bound by that factual determination unless rebutted by clear and convincing evidence.[150] Normally, that would end the inquiry. With respect to the subject of the pre-preliminary hearing, there is nothing in the record that indicates a conflict between the interests of Beard and Branson or that, even if there were, the outcome could possibly have differed. More importantly, it could not have even remotely affected Beard's ultimate conviction. In this case, however, Beard also alleges that in advance of the pre-preliminary hearing, his co-defendant's counsel questioned him extensively about the crime and the respective roles of both Beard and Branson in its commission. Branson subsequently entered

---

[147] *Pirtle*, 313 F.3d at 1167.

[148] *Cuyler v. Sullivan*, 466 U.S. 335, 350 (1980); *see Holloway v. Arkansas*, 435 U.S. 475, 489-90 (1978) ("Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.").

[149] *Mickens v. Taylor*, 535 U.S. 162, 170-71 (2002).

[150] 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.

a plea and testified against Beard at Beard's trial.  Beard contends that, because Branson entered

a plea agreement in exchange for which Branson received a favorable sentence and testified

against Beard at Beard's trial, Beard's defense was prejudiced.

Other than the fact that Branson was the principal prosecution witness against him,[151]

Beard points to no other manner in which his defense was prejudiced.  The "conflicted" attorney

did not represent Beard at trial.  The only possible prejudice is that Branson's attorney received

information from the alleged interrogation of Beard that was used to influence Branson to enter a

plea and agree to testify against Beard.  Beard points to no evidence that this, in fact, occurred.

The alleged interrogation took place in the holding cell prior to a hearing while both Beard and

Branson remained co-defendants.  Presumably, since it was a preliminary hearing on the

scheduling of a joint trial, Branson was also present.  Beard does not recite what he told

Branson's counsel that might have somehow prejudiced Beard's defense.  The record in this case

is devoid of any evidence that Branson's counsel was conflicted in the joint representation of

both Beard and Branson at the pre-preliminary hearing.

Beard did not request an evidentiary hearing in the state courts, nor has he requested an

evidentiary hearing before this Court.  Even if Beard did request an evidentiary hearing, the

Court would not be inclined to grant it.  Ordinarily, a federal habeas proceeding is decided on the

complete state-court record and a federal evidentiary hearing is required only if the trier of fact in

---

[151] Beard's argument about the "inequity" between the sentence Branson received as a result of his plea and the sentence Beard received is irrelevant to this issue.  That a co-defendant receives a more favorable sentence as a result of a plea agreement is a common and natural occurrence.  It is the "carrot" dangled by the prosecution as an inducement for entering into a plea.  By proceeding to trial, Beard assumed the risk that, if found guilty by the jury, he would receive a greater or more harsh sentence than did Branson as a result of his agreement to plead.

the state proceeding has not developed the relevant facts after a full hearing.[152]  Even then,

AEDPA strictly cabins the discretion to hold an evidentiary hearing to circumstances not present

in this case.[153]  Because Beard did not request an evidentiary hearing in the state courts, it cannot

be said on the record that the state courts precluded him from developing the factual basis for his

claim.[154]  Finally, Beard has not identified any factual conflict that would require this Court to

hold an evidentiary hearing to resolve.

Beard has failed to establish that his defense was prejudiced, as required by *Strickland-*

*Hill*.  The assumed decision of the El Dorado County Superior Court was not contrary to, nor did

it involve an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States, nor was it based on an unreasonable determination of the

facts in light of the evidence presented in the State court.[155]  Accordingly, Beard is not entitled to

relief under his thirteenth ground.

Ground 15:  Ineffective Assistance of Trial Counsel

In this ground, Beard contends that his trial counsel:  (1) inadequately investigated and

pursued his claim that the "Global Settlement" encompassed the charges on which he was

convicted; and (2) "acted in an improper and cohesive capacity" in dealing with his brother's

---

[152] *Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. § 2254(e)(2) (1996).

[153] 28 U.S.C. § 2254(e)(2).

[154] *See Pinholster*, 563 U.S. at ___, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

[155] 28 U.S.C. § 2254(e).

Fifth Amendment privilege.  Beard raised these issues in his state habeas petitions.  The El

Dorado County Superior Court rejected Beard's arguments, holding:

> As his final ground, [Beard] alleges that his trial counsel was ineffective.
> He failed to prevail on the privilege issue, as well as full disclosure of the plea
> bargain for the co-defendant.  A review of the entire record establishes that these
> allegations are untrue.  The agreements were in the record and considered on
> appeal.  Not only is the claim unintelligent, there is a failure to state a claim
> (*People v. Duvall* 9 Cal. 4th 464).  The record refutes [Beard's] claims.[156]

Beard's argument *vis-a-vis* counsel's investigation into the "Global Settlement"

agreement is simply that counsel did not adequately respond to Beard's inquiries regarding

Beard's belief that the agreement encompassed the charges on which he was tried and convicted.

As the El Dorado County Superior Court found, the plea agreement was in the record.  As

discussed above in connection with Beard's eleventh ground, Beard's expectations upon which

he premised his acceptance notwithstanding, the "Global Settlement" Agreement was not

breached by the prosecution in this case.[157]

As to Beard's argument that his trial counsel somehow "acted in an improper and

cohesive capacity" in addressing the Fifth Amendment claim by Beard's brother, Beard not only

provides no factual basis for this claim but, as discussed in connection with Beard's twelfth

ground,[158] there was no legal basis upon which Beard's counsel could have prevented Beard's

brother, who was represented by separate counsel, from invoking his Fifth Amendment rights.

This Court cannot say that the decision of the El Dorado County Superior Court was

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[156] Lodged Doc. No. 12, p. 3.

[157] *Ante*, pp. 37-39.

[158] *Ante*, pp. 21-27.

determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[159] Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Beard's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Beard has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*. In particular, Beard has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Beard is not entitled to relief under his fifteenth ground.

## G.    Ground 14:  Judicial Bias

During trial, the following colloquy occurred at a bench conference:

> [BEARD'S COUNSEL]:  I don't think it's relevant that her temperature was low and I think they can get it in.  The other information that it's elevated, I think that's all relevant.  Now we're getting into areas that really don't have much to do with the rape or the kidnapping.
> [COURT]:  You know, I think her—in a sense, I think it doesn't specifically have to do with the elements of the events.  But we have testimony from the prior witnesses about the fact that this girl was left out there by both of these gentlemen, naked, if you believe the testimony that is attributed to your client that she was basically left out there for dead, so I think it is relevant and I think that he can allay in on what affects it had on her physical condition.[160]

---

[159] 28 U.S.C. § 2254(d).

[160] Lodged Document No. 2, Reporter's Transcript on Appeal, Vol. 2, pp. 447-48.

Beard contends that this was a "speculated opinion that [Beard] left a minor female out naked to die."[161]  Beard then attempts to use this to show that several rulings adverse to Beard's case were the product of bias.  Beard raised this issue in his state habeas proceedings.  The El Dorado County Superior Court rejected Beard's contention, holding:  "As a separate ground, the Petitioner raises the issue of judicial error and bias.  The issue was resolved on appeal.  (*In Re Lindley* 29 Cal.2d 709, 723.)"[162]

Although the question of the challenged rulings were resolved—against Beard—the issue of judicial bias was not itself addressed on direct appeal.  There being no reasoned decision on the issue presented to this Court, it must assume that the El Dorado County Superior Court decided the issue on the merits applying federal constitutional law,[163] and give the assumed decision the same deference as a reasoned decision.[164]

On the question of judicial bias, the Supreme Court has stated:

> [. . . .]  First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  See *United States v. Grinnell Corp.,* 384 U.S. at 583, 86 S.Ct., at 1710.  In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or

---

[161] Petition, Docket No. 1, p.14.

[162] Lodged Document No. 12, p. 3.

[163] *See Harris*, 489 U.S. at 263; *Coleman*, 501 U.S. at 740.

[164] *Richter*, 562 U.S. at ____, 131 S. Ct. at 784-85.

even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.[165]

Each of the adverse rulings that Beard alleges were the product of judicial bias was upheld on appeal.  There is no indication in the record that the trial judge's opinion was derived from an extra-judicial source.  Indeed, the very comment that Beard refers to is based upon the evidence presented in the trial.  Because the comment was on the evidence before the court, and was based upon the premise "*if it is believed*" without expressing an opinion on its believability, it cannot be said that it reveals a high degree of antagonism against Beard or favoritism to the prosecution.  Beard's arguments are based upon nothing more than speculation and conjecture.

Implicit in the decision of the El Dorado County Superior Court is that, because the challenged rulings were upheld on appeal on the merits, they were not erroneous.  Because the rulings were not erroneous, they could not have been the product of bias.  The assumed reasoning of the El Dorado County Superior Court was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was it based on an unreasonable determination of the facts in light of the evidence presented in the State court.[166]  Beard has failed to establish a question of constitutional dimension and is not entitled to relief under his fourteenth ground.

---

[165] *Liteky v. United States*, 510 U.S. 540, 555 (1994) (emphasis in the original).

[166] 28 U.S.C. § 2254(e).

49

## V.  CONCLUSION AND ORDER

Beard is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[167]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[168]

The Clerk of Court is to enter judgment accordingly.

Dated:  August 5, 2011.

_____/s/ James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
United States District Judge

---

[167] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("to obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El*, 537 U.S. at 327)).

[168] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.